# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Yousif Abdullah Al-Rubaish** | ) | |
| **Detainee,** | ) | |
| **Guantanamo Bay Naval Station** | ) | |
| **Guantanamo Bay, Cuba;** | ) | |
| | ) | |
| **Abdullah Saleh Al-Rubaish,** | ) | |
| | ) | |
| **as Next Friend of** | ) | |
| **Yousif Abdullah Al-Rubaish** | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| | ) | **PETITION FOR WRIT** |
| | ) | **OF HABEAS CORPUS** |
| **v.** | ) | |
| | ) | |
| | ) | **No. _____** |
| | ) | |
| **GEORGE W. BUSH,** | ) | |
| **President of the United States** | ) | |
| **The White House** | ) | |
| **1600 Pennsylvania Ave., N.W.** | ) | |
| **Washington, D.C. 20500;** | ) | |
| | ) | |
| **DONALD RUMSFELD,** | ) | |
| **Secretary, United States** | ) | |
| **Department of Defense** | ) | |
| **1000 Defense Pentagon** | ) | |
| **Washington, D.C. 20301-1000;** | ) | |
| | ) | |
| **ARMY BRIG. GEN. JAY HOOD,** | ) | |
| **Commander, Joint Task Force - GTMO** | ) | |
| **JTF-GTMO** | ) | |
| **APO AE 09360; and** | ) | |
| | ) | |
| **ARMY COL. MIKE BUMGARNER,** | ) | |
| **Commander, Joint Detention** | ) | |
| **Operations Group - JTF-GTMO,** | ) | |
| **JTF-GTMO** | ) | |
| **APO AE 09360,** | ) | |
| | ) | |
| *Respondents*. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Yousif Abdullah Al-Rubaish ("Petitioner" or "Al-Rubaish") seeks a Writ of Habeas Corpus. He is a citizen of Saudi Arabia. He acts on his own behalf and through his Next Friend, Abdullah Saleh Al-Rubaish, his father ("Next Friend"). *See* Letter of Authorization of Next Friend (<u>Exhibit "A"</u>). Petitioner is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court a lawful basis for Petitioner's detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo.

## I.
## JURISDICTION

1.    Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.

Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651,

2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed by Abdullah Saleh Al-Rubaish, the Next Friend of Petitioner Yousif Abdullah Al-Rubaish, under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.    Petitioner is a Saudi Arabian citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control. *See* Letter of Authorization of Abdullah Saleh Al-Rubaish.

4.    The Next Friend is Abdullah Saleh Al-Rubaish, Petitioner's father. He is a Saudi Arabian citizen. Because his son has been denied access to legal counsel and to the courts of the United States, Abdullah Saleh Al-Rubaish acts as Petitioner's Next Friend.

5.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg.

57,833 (November 13, 2001) ("Executive Order").  President Bush is responsible for Petitioner Al-Rubaish's unlawful detention and is sued in his official capacity.

6.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Al-Rubaish.  He is sued in his official capacity.

7.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay.  He has supervisory responsibility for Petitioner Al-Rubaish and is sued in his official capacity.

8.    Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Al-Rubaish is presently held. He is the immediate custodian responsible for Petitioner's detention and is sued in his official capacity.

9.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

**III.**
**STATEMENT OF FACTS**

10.     Upon information and belief, Petitioner Al-Rubaish is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

11.     Upon information and belief, Petitioner Al-Rubaish is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S.Ct. 2639 (2004).

12.     Petitioner seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

13.     Petitioner Al-Rubaish lives in the Qassim region, which is located in the middle of Saudi Arabia.  In early 2003, Petitioner was 20 years old.  He had four brothers and five sisters. He looked after his mother and five sisters.  He graduated from secondary school and was planning to join the University.

14.     One of Petitioner's younger brothers, Abdul-Malik, left for Pakistan in early 2003 when he was 17 years old. Abdul-Malik had been traveling for six (6) months when his mother became saddened by Abdul-Malik's lengthy absence and wanted her son to return to Saudi Arabia.  Petitioner agreed to, and did, travel to Pakistan to find and bring back his brother.  Thereafter, Petitioner called his family in Saudi Arabia and announced that he had found his brother and that the two of them would soon return home to Saudi Arabia.

15.    Some time later, one of Petitioner's sisters received a telephone call from a stranger who told her that her brother Abdul-Malik had been killed and Petitioner had been arrested. The caller said that he found her telephone number from a piece of paper that was in Abdul-Malik's pocket.  The caller also said that some Pakistanis had cheated the three of them by saying they would show Petitioner, Abdul-Malik and the caller the way to Saudi Arabia, but instead took them to the American Army in Pakistan.  The Pakistanis referred to the three of them as Arab foreigners and when Abdul-Malik protested, someone from the American Army shot him dead and took Petitioner as a prisoner.  Thus, Petitioner Al-Rubaish was not taken initially taken into custody by American forces; he was taken into custody against his will by Pakistanis and then handed over to Americans for money.

16.    In or around August 2003, Petitioner's family received a written message from Petitioner, apparently written after Petitioner was arrested.  Petitioner expressed his innocence and the fact that he had not committed any crimes.

17.    Petitioner's father, the Next Friend, believes that none of his sons, including Petitioner, were ever involved in any violent activity.  In addition, the Next Friend states that he and others have heard stories of Arab Nationals being delivered unknowingly by Pakistani bounty hunters to the Americans located in Pakistan...in order to receive financial rewards.

18.    Upon information and belief, at the time of his seizure and detention, Petitioner Al-Rubaish was not a member of the Taliban Government's armed forces or Al Qaeda.  He did not cause or attempt to cause any harm to American personnel or property prior to his detention.  He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

19.    Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

20.    Upon information and belief, Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

## The Joint Resolution

21.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

22.    As, upon information and belief, Petitioner Al-Rubaish did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

23.    Upon information and belief, Petitioner Al-Rubaish is not, and has never been, a member of Al Qaeda or any other terrorist group.  Prior to his detention, he did not commit any violent act against any American person or espouse any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  He is not properly subject

7

to the detention order issued by President Bush.  As he did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

24.    Neither the Respondents nor any other agents of the United States government have produced any information to support any link between Petitioner and organizations or persons involved in the terrorist attacks on September 11, 2001, or any other terrorist attack attributed by the United States to Al Qaeda or any other international terrorist group.  The limited information available indicates that Petitioner was in Pakistan for reasons unrelated to the activities of Al Qaeda or any other terror organization and that he was seized there and transferred to United States military custody in early 2003.

### The Executive Order

25.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

i.      is or was a member of the organization known as al Qaeda;

ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).  President Bush must make this determination in writing.  The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

26.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III or other court.  In fact, the Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

27.    The Executive Order was promulgated in the United States and in this judicial district.  The decision to incarcerate Petitioner Al-Rubaish was made by Respondents in the United States and in this judicial district.  The decision to detain Petitioner Al-Rubaish at Guantánamo was made in the United States and in this judicial district.  The decision to continue detaining Petitioner Al-Rubaish, was, and is, being made by Respondents in the United States and in this judicial district.

28.    President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Al-Rubaish is subject to the Executive Order.

29.    Petitioner Al-Rubaish is not properly subject to the Executive Order.

30.     Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Petitioner was not arrested or detained by the United States in the course of an armed conflict. Petitioner Al-Rubaish is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

31.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

32.     Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (June 28, 2004).

33.     By at least August 29, 2003, the precise date being unknown to counsel, but known to Respondents, the United States military transferred Petitioner Al-Rubaish to Guantánamo, where he has been held ever since, in the custody and control of Respondents.

### The Conditions of Detention at Guantánamo

34.     Since gaining control of Petitioner Al-Rubaish, the United States military has held him virtually *incommunicado.*

35.     Upon information and belief, Petitioner has been or will be forced to provide involuntary statements to Respondents' agents at Guantánamo and has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not

been notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Al-Rubaish should not be informed of these rights. As a result, Petitioner Al-Rubaish lacks any ability to protect or to vindicate his rights under domestic and international law.

36.    Upon information and belief, Petitioner Al-Rubaish has been forced to provide involuntary statements to Respondents' agents, employees, and/or contract employees at Guantanamo.

37.    Upon information and belief, Petitioner Al-Rubaish has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See*, *e.g.*, United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees", Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay", Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC", July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at

http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck,
*Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers
Champion, Nov. 2004, at 4-5. Indeed, many of these violations – including isolation for
up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep
deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create
anxiety and terror – were actually interrogation techniques approved for use at
Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from
William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002);
*Pentagon Working Group Report on Detainee Interrogations in the Global War on
Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at
62-65 (Apr. 4, 2003).[1]

38.    In a confidential report to the United States government, the ICRC charged the U.S.
military with intentional use during interrogations of psychological and physical coercion
on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red
Cross Finds Detainee Abuse in Guantánamo", *New York Times*, Nov. 30, 2004, at A1.
The report includes claims that doctors and other medical workers at Guantánamo
participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan
H. Marks, "When Doctors Go to War", *New England Journal of Medicine*, Jan. 6, 2005,
at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo
are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul,
Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo
Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23
july04.pdf). The Department of Defense also informed the Associated Press that a number of
interrogators at Guantanamo have been demoted or reprimanded after investigations into
accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov.
4, 2004.

at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo", *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos", *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates", *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay", *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo", *New York Times*, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005.

39. The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees", *Seattle Post-Intelligencer*, Jan. 19, 2005.

13

40.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush.  Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA", *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate", *Washington Post*, Jan. 18, 2005, at A4.

41.     In published statements, President Bush and Secretary Rumsfeld, and predecessors of Hood and Gyurisko, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely.  See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . .  'We have to look at Camp X-ray as a work in progress . . .' Lenhert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled", *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

42.   According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

43.   Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained Petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects", *Wash. Post*, Jan. 2, 2005, at A1. Moreover, the Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape", *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency", Jan. 9, 2005.

**Rendition**

44.   During interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "rendition" or "extraordinary rendition", is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's 'Extraordinary Rendition' Program", *The New Yorker*, Feb. 14, 2005, at 106.

45.    The U.S. government's practice of rendition has been well documented by various major

American and international news organizations, including, *inter alia*, the *Washington*

*Post*, *The Los Angeles Times* and the British Broadcasting Corporation (the "BBC").

According to new accounts,

> Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source.  The suspects have been taken
> to countries, . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources
> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects",

*Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for

Terror Suspects", *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions',

depend on arrangements between the United States and other countries, such as Egypt ...,

that agree to have local security services hold certain suspects in their facilities for

interrogation by CIA and foreign liaison officers.").

46.    In recent days, news organizations have reported that dozens of detainees in Guantánamo,

including detainees from Saudi Arabia, might soon be returned to their home country.

Upon information and belief, Petitioner Al-Rubaish is at risk of being rendered, expelled

or returned without lawful procedures to a country that engages in torture during

interrogations and incarceration.

**IV.**
**CAUSES OF ACTION**

FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY)

47.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

48.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Al-Rubaish the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

49.    To the extent that Petitioner's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

50.    Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF<br>(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

51.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

52.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Al-Rubaish to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

53.     Accordingly, Petitioner Al-Rubaish is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

54.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

55.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Al-Rubaish the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

56.     Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

57.     Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

58.     Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

59.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

60.     By the actions described above, Respondents have denied and continue to deny Petitioner Al-Rubaish the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian

and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

61. Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

62. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

63. By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Al-Rubaish in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Al-Rubaish or for other purposes.  Among other abuses, Petitioner Al-Rubaish has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

64. The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other

international instruments, international and domestic judicial decisions, and other authorities.

65.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Al-Rubaish.

66.    Petitioner Al-Rubaish was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES )

67.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

68.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Al-Rubaish constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

69.    As a result of Respondents' unlawful conduct, Petitioner Al-Rubaish has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

70.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.     The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Al-Rubaish, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

72.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner.

74.     Petitioner Al-Rubaish was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

75.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.     The acts described herein constitute arbitrary arrest and detention of Petitioner Al-Rubaish in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as

reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

77.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Al-Rubaish in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

78.    As a result of Respondents' unlawful conduct, Petitioner Al-Rubaish has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

79.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

80.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Al-Rubaish in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

81.    As a result of Respondents' unlawful conduct, Petitioner Al-Rubaish has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical

and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

82.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.    Petitioner Al-Rubaish is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield."  *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

84.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Al-Rubaish and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.   All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner.

85.    The military seizure and detention of Petitioner Al-Rubaish by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

86.    To the extent that Respondents assert that their authority to detain Petitioner Al-Rubaish derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

87.    Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

88.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See*, *e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

90.    By arbitrarily and capriciously detaining Petitioner Al-Rubaish in military custody for about two and one-half (2-1/2) years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.    Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

92.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

93.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Al-Rubaish the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

94.     Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

95.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.     By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Al-Rubaish to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

97.     Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

98.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Al-Rubaish's right to consult with counsel by

conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Al-Rubaish's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

100.    Accordingly, Petitioner Al-Rubaish is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

101.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.    Upon information and belief, Petitioner Al-Rubaish is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

103.    Accordingly, Petitioner Al-Rubaish is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

104.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

105.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against

Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

106. Accordingly, Petitioner Al-Rubaish is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

107. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

108. Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

109. Accordingly, Petitioner Al-Rubaish is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**V.**
**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

1. Designate Abdullah Saleh Al-Rubaish as Next Friend of Petitioner Yousif Abdullah Al-Rubaish;

2. Grant the Writ of Habeas Corpus and order Respondent to release Petitioner Al-Rubaish from his current unlawful detention;

3. Order that Petitioner Al-Rubaish be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.      Order that Petitioner Al-Rubaish cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

5.      Order that Petitioner Al-Rubaish cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioner will be subject to torture;

6.      Order Respondents to allow counsel to meet and confer with Petitioner in private and unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Petitioner Al-Rubaish, direct or indirect, while this litigation is pending;

8.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner;

9.      Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

10.     Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Al-Rubaish without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law;

11.     Order and declare that Petitioner is subject to the protections of the Geneva Conventions and international humanitarian law;

12.    Order immediate, private and unmonitored access by counsel to Petitioner;

13.    Order Respondents not to move Petitioner from Guantánamo Bay without providing thirty-days' notice to the Court and Petitioner's counsel of any proposed transfer;

14.    To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing at which Petitioner may adduce proof in support of his allegations;

15.    Order Petitioner Al-Rubaish to recover the costs of suit and that Petitioner's attorney be awarded attorneys' fees in accordance with the Criminal Justice Act, 28 U.S.C. 3006A, the Equal Access to Justice Act, 28 U.S.C. 2412, and other applicable statutes, rules and principles; and

16.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

//

//

//

//

//

//

Dated: _____, 2005        Respectfully submitted,

Counsel for Petitioners:

_____

Michael Rapkin
Law Offices of Michael Rapkin
California State Bar No. 67220
1299 Ocean Avenue, Suite 900
Santa Monica, California  90401
Tel:  (310) 656-7880
Fax:  (310) 656-7883


*Of Counsel*
Barbara Olshansky (NY0057)
Tina Monshipour Foster (NY5556)
Gitanjali S. Gutierrez (NY1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## <u>CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION</u>

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.


Dated: _____, 2005

_____
Michael Rapkin
Law Offices of Michael Rapkin
1299 Ocean Avenue, Suite 900
Santa Monica, California  90401
Tel:  (310) 656-7880
Fax:  (310) 656-7883

# EXHIBIT "A"

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Petition for Writ of Habeas Corpus to be served this _____ day of _____, 2005, by certified mail, return receipt requested on:

Alberto R. Gonzales
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Avenue, NW
Room 5111
Washington, DC  20530

George W. Bush
President, United States of America
The White House
1600 Pennsylvania Avenue, NW
Washington, DC  20301-1000

Donald Rumsfeld
Secretary, United States Department of Defense
1000 Defense Pentagon
Washington, DC  20301-1000

Army Brig. Gen. J. Hood
Commander, Joint Task Force-GTMO
JTF-GTMO
APO AE 09360

Army Col. Brice Gyurisko
Commander, JDOG
JTF-GTMO
APO AE 09360

I further certify that I have caused a copy of the foregoing Petition for Writ of Habeas Corpus to be served this same day by hand on:

Kenneth L. Wainstein
U.S. Attorney
District of Columbia District
Judiciary Center
555 Fourth Street, NW
Washington, DC  20530

_____
Michael Rapkin
Law Offices of Michael Rapkin
1299 Ocean Avenue, Suite 900
Santa Monica, California  90401