IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Yousif Abdullah Al-Rubaish, *et al.*, ) <br> ) <br> Petitioners, ) <br> ) <br> v. ) <br> ) <br> GEORGE W. BUSH, *et al.*, ) <br> ) <br> Respondents. ) <br> ) | Civil No. 05-cv-1714-RWR |

**PETITIONERS' OPPOSITION TO MOTION TO STAY**

The undersigned counsel for Petitioners has read previous orders that Judge Richard Roberts has entered in other similar Guantánamo cases, including *El-Banna*, No. 04-cv-1144; *Abdullah*, No. 05-cv-23; and *Rashaidan*, No. 05-cv-586. Based on the similarity of those cases to the instant case Petitioners would expect that this Court would grant, in part, and deny, in part, Respondents' Motion for Stay. Further, Petitioners would expect that the stay would be conditioned as follows:

    1. Petitioners will have the ability to seek emergency relief from this Court in appropriate circumstances;

    2. Respondents, their agents, servants, employees, confederates, and others will be enjoined from transferring or removing Petitioner Al-Rubaish from U.S. custody at Guantánamo Bay unless this Court and counsel for Petitioners receive thirty days' advance notice of such transfer or removal;

    3. Respondents be required to file a factual return relating to Petitioner Al-Rubaish;

4. Respondents preserve and maintain all evidence, documents and information, without limitation, now or ever in Respondents' possession, custody or control regarding Petitioner.

Orders like the above were issued by Judge Roberts on March 16, 2005, over eight months ago. The parties in those cases, and others, have been waiting for the outcome of appeals based on, in part, decisions rendered by Judges Green and Leon. It's now late November and eight more months have elapsed since the March 16 orders. Petitioner has been imprisoned for a few days short of four years, without charges having ever been brought against him. He should not and cannot wait until the outcome of these appeals. Discovery needs to commence now!

Petitioner needs this Court to determine the lawfulness of his custody, as well as for the Court to maintain judicial scrutiny over the conditions of Petitioner's custody. The Court should deny the Government's motion.

It is respectfully submitted that **this case, at this time,** warrants the commencement of discovery. The Court is requested to draw a line in the sand and rule that this human being's imprisonment has gone on for too long, that it is unknown when there will be an appellate resolution in the Guantánamo cases, or even if the Supreme Court will grant certiorari upon the application of the losing party.

It is urged that Judge Roberts, **at this time,** should allow discovery which he can personally supervise. By doing so, Petitioner will be allowed to develop the factual basis for his relief; to determine if Petitioner is not getting proper medical attention-as has been the case with other prisoners at Guantánamo; and to determine if Petitioner has been tortured and the evidence obtained from the torture was used to deem Petitioner an enemy combatant at his Combatant Status Review Tribunal.

Granting the stay without discovery will prolong the inhumane conditions suffered by Petitioner, who contends he is innocent of any wrongdoing. Even the Government admits that many of the prisoners in Guantánamo are innocent of wrongdoing. Why should the Government admit on the one hand it is incarcerating innocent people and on the other hand refuse to allow discovery to determine whether Petitioner is one of the innocent people? Consider the following comments from the Government's own agents.

Government officials have now acknowledged that many of those at Guantánamo are innocent and should not be there. As *The Wall Street Journal* reported: "American commanders acknowledge that many prisoners shouldn't have been locked up here in the first place because they weren't dangerous and didn't know anything of value. 'Sometimes, we just didn't get the right folks.' says Brig. Gen. Jay Hood, Guantánamo's current commander."[1] The deputy commander, General Martin Lucenti, commented that, "Most of these guys weren't fighting. They were running."[2] (Petitioner Al-Rubaish, it is believed, was not caught on the battlefield; rather, he was picked up by a bounty hunter while in Pakistan.)

Former interrogators have confirmed those statements. As one stated: "There are a large number of people at Guantánamo who shouldn't be there. . . They have no meaningful connection to al Qaida or the Taliban."[3] A CIA operative who had spent a year undercover at Guantánamo stated that "only like 10 percent of the people that are really dangerous, that should be there and the rest are people that don't have anything to do with it...don't even understand what they're doing here."[4] An army linguist who participated in numerous Guantánamo

---

[1] Christopher Cooper, "Detention Plan: In Guantánamo, Prisoners Languish in Sea of Red Tape", *The Wall Street Journal*, Jan. 26, 2005.
[2] Mark Huband, "US Officer Predicts Guantánamo Releases", *Financial Times*, Oct. 4, 2004.
[3] Samara Kalk Derby, "How Expert Gets Detainees to Talk", *The Capital Times & Wisconsin State Journal*, Aug. 16, 2004, at 1A.
[4] *Frontline: Son of Al Qaeda* (PBS television broadcast, Apr. 11, 2004); transcript available at http://www.pbs.org/wgbh/pages/frontline/shows/khadr/interviews/khadr.html.

interrogations estimated that "(a)t best, I would say there were a few dozen" out of the five hundred at Guantánamo who had any connection with terrorism.[5]

Indeed, of all the people taken to Guantánamo, only 14 have been designated by the Government as people it has "reason to believe" were involved with terrorism.[6]

If this Court should be inclined to grant a stay, it should be conditioned upon or accompanied by Respondents (a) <u>providing a factual return by December 23, 2005</u> so that counsel can prepare for his visit to Guantánamo to confer for the first time with Petitioner; (b) preserving all evidence, documents, and information relating to Petitioner's case; (c) providing 30 days' advance notice of any transfer of Petitioner from Guantánamo Bay; and (d) allowing discovery.  Petitioners requested some of this relief in two motions filed on November 14, 2005. One motion was to preserve evidence and the other was for Respondents to provide 30 days' advance notice of any transfer of Petitioner from Guantánamo.  In addition, the Court, on its own, issued on November 1, 2005, an order requiring Respondents "to file and serve on the petitioner a statement showing why the Writ of Habeas Corpus should not issue.  This obviated Petitioners from having to file this motion.

First, the Court ordered Respondents to file a factual return within 45 days of service (service was effected on November 8, 2005).  If, for some reason, Respondents do not comply with this Order then the stay should not be granted.

Second, Petitioners request that Respondents preserve all evidence relating to Petitioner Al-Rubaish and his case.  This information must be preserved as set forth in Petitioners' Motion for Preservation Order.

---

[5] Interview with Erik Saar, Author, "Inside the Wire", CBS *60 Minutes*, May 1, 2005; available at http://www.cbsnews.com/stories/2005/04/28/60minutes/main691602.shtml.

[6] See "Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terror"; 66 Fed. Reg. 57, 831-36 (Nov. 16, 2001).

Third, Petitioners request 30 days' advance notice to the Court and counsel of Respondents' intent to remove Petitioner from Guantánamo. Such a transfer could deprive this Court of jurisdiction over Petitioner's habeas claims and result in Petitioner being detained indefinitely or tortured.

Fourth, as discussed above, discovery must now be allowed. The Government has had four years to bring charges against Petitioner and to find him guilty of those charges -- and has failed to do so.

"Coexistensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties." *Al-Oshan v. Bush*, No. 05-520 (RWR), at 2 (D.D.C. March 31, 2005). In this case, the Court should condition the stay of proceedings, if such a stay will be ordered, on Respondents' compliance with the four requests described above. As Judge Roberts' explained,

> "A primary purpose of a stay pending resolution of the issues on appeal is to preserve the status quo among the parties...A court may, in appropriate situations, specify protective conditions in balancing the hardship necessarily imposed on the party whose suit...has been stayed pending appeal...Where, as here, the condition (i.e., advance notice of transfer) imposed on the proponent of the stay is 'neither heavy nor unexpected' imposing a protective condition is well within a court's discretion."

*Ahmed v. Bush*, 2005 U.S. Dist. LEXIS 14024, at *2-3 (D.D.C. July 8, 2005) (citations omitted). In this case, complying with Petitioners' four requests, including the discovery request, would be neither burdensome nor unexpected, and such compliance is necessary to both preserve the status quo and allow Petitioners to obtain evidence through discovery so as to determine the basis for his four year detention without charges ever having been brought against him.

## Conclusion

For the reasons set forth above, the motion for stay should be denied, but if granted the Court should condition the stay as requested above.

Dated: November __, 2005

Respectfully submitted,

Counsel for Petitioners:

_____
Michael Rapkin
Law Offices of Michael Rapkin
California State Bar No. 67220
1299 Ocean Avenue, Suite 900
Santa Monica, California 90401
Tel: (310) 656-7880
Fax: (310) 656-7883

*Of Counsel*
Barbara Olshansky (NY0057)
Tina Monshipour Foster (NY5556)
Gitanjali S. Gutierrez (NY1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499