PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| YOUSIF ABDULLAH AL-RUBAISH, *et al.,* | ) ) ) |  |
| *Petitioners,* | ) ) |  |
| v. | ) ) | 05-1714 (RWR) |
| GEORGE W. BUSH, *et al.,* | ) ) ) |  |
| *Respondents* | ) ) |  |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS
AND CROSS-MOTION FOR STAY AND ABEY ORDER**

Petitioner, Yousif Abdullah Al-Rubaish, through his attorney, opposes the Respondents' Motion to Dismiss and cross moves for an order holding the case in abeyance until Petitioner has exhausted his remedies in the Court of Appeals under the Detainee Treatment Act of 2005[1] ("DTA") and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*[2] ("*Boumediene I*"), or the Supreme Court's resolution of the same jurisdictional issue as presented in a pending original habeas corpus petition filed in *In re Ali* , No. 06-1194, which challenges the Military Commissions Act's jurisdictional holding of the Court of Appeals. Further, Petitioner requests that in the event this Court determines it lacks jurisdiction over the action, it should transfer this habeas action to the

---

[1] Pub. L. No. 109-148, 119 Stat. 2680 (2005)

[2] 476 F. 3d 1981 (D.C. Cir. 2007)

Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioner's DTA actions (to be filed shortly herewith).

Petitioner was transferred to a Saudi Arabia prison in December 2006; however, as discussed more fully below, the fact that Petitioner is no longer in Guantanamo does not in and of itself require that this action be dismissed. The habeas claim is not moot and it would be premature to dismiss it. First, the Court of Appeals' decision in *Boumediene I* is not dispositive as to the merits of continuing to maintain a repatriated petitioner's habeas action. Second, Petitioner would suffer irreparable harm if his habeas action is dismissed because he would neither be able to test the legitimacy of his executive detention nor eliminate the collateral effects of his having been labeled an "enemy combatant", a designation the United States government to this day refuses to retract.

In addition, dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is frivolous or foreclosed by prior decisions of the **Supreme Court,** not of the Circuit Court. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89 (1998).

1.  **It Would Be Premature for This Court to Dismiss Petitioner's Habeas Action for Lack of Jurisdiction.**

Respondents argue that dismissal of this habeas action is consistent with the established law of this Circuit (*Boumediene I*) as well as the clear intent of Congress as expressed within the Military Commissions Act of 2006 ("MCA"), Pub. L. No 109-366, 120 Stat. 2600.[3] This argument fails to recognize that the holding in *Boumediene*

---

[3] "Petitioners' motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress,

2

*I* is neither final nor binding upon this court. Moreover, the constitutionality of the statute is still being litigated. As a matter of necessary predicate, the Supreme Court has openly invited habeas counsel to exhaust all available remedies in order to repetition the Court for review. Dismissal at this time would be premature. Until the constitutionality of the MCA has been resolved, it is more appropriate to maintain the stay of these habeas actions.

      A.    *Boumediene I* Is Not Binding Upon This Court.

The Court of Appeals has not issued its mandate in *Boumediene I*. Thus, this Court does not presently have jurisdiction over the merits of this case and cannot act on the government's motion to dismiss. The law of this circuit is that "(t)he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'"[4]

The *Boumediene* petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*. The court has not yet acted on the motion. This case is presently before the D.C. Circuit on an interlocutory appeal (No. 05-5398) and the government has moved to dismiss in that

---

expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases." Motion to Dismiss at 1.

[4] *United States v. DeFries,* 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Providence Consumer Discount Co.,* 459 U.S. 56, 58 (1982).

3

case. But the "district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." [5]

### B.     The Constitutionality of the MCA Is Currently Being Litigated.

Respondents argue that the law of the circuit is settled, but this is premised upon an incorrect interpretation of *Boumediene I*.   While the Court of Appeals based its decision in *Boumediene I* upon its reading of the MCA, the constitutionality of the MCA itself is still in dispute.  On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens imprisoned at Guantánamo Bay and held that post-*Rasul* statutes deprived courts of jurisdiction over the habeas actions brought by petitioners in those cases.[6]  The *Boumediene* petitioners filed a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari.[7]  In their concurrence, however, Justices Kennedy and Stevens held that, given the Court's "practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "*at this time*."[8] (emphasis added)  It therefore appears that five Justices will give serious consideration to a renewed petition for certiorari seeking review of

---

[5]  *DeFries,* 129 F.3d at 1302-1303. The reasoning is one of judicial economy. The so-called "mandate rule" "prevents the waste of judicial resources that might result if a district court, prior to the issuance of the appeals court's mandate, proceeds with a case, ruling on motions and hearing evidence, after which the appeals court reverses its original decision on rehearing."

[6] *Boumediene I, 476 F.3d at 981.*

[7] *Boumediene v. Bush,* 127 S.Ct. 1478 (2007).

[8]  *Id,* at 1478.

the decision in *Boumediene I*, following petitioners' exhaustion of their DTA remedies. A majority of the Supreme Court, in other words, has left open the possibility that the Court of Appeals' holding is erroneous and that the petitioners have the right to pursue habeas relief in the district courts.[9]

While Respondents dismiss this process as a "speculative chain of events,"[10] in reality, this process is well underway. Two Supreme Court Justices have expressly invited an exhaustion of remedies, and the Court of Appeals singled out a failure to exhaust remedies as a reason for the dismissal of the petition of the *Boumediene* petitioners.[11] There is nothing "speculative" about this; both holdings cited by Respondents as authorities for their motion to dismiss have implied that their holdings may have been decided differently had petitioners exercised this alternative option. Until that option has been exhausted by scores of other habeas cases (including this one), *Boumediene I* should be treated as it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon any of the district courts. *See Texas v. Cobb,* 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker,* 543 U.S. 220, 239-

---

[9] Indeed, the Supreme Court may reach these questions sooner, as there is a case currently pending before that Court that directly concern the MCA jurisdictional holding of the Court of Appeals. This case involves an original habeas corpus petition in *In re Ali*, No. 06-1194, which challenges the MCA jurisdictional holding of the Court of Appeals. The Supreme Court considered the *Ali* petition sufficiently serious that it directed the government to respond to the petition by April 16, 2007.

[10] Motion to Dismiss at 5.

[11] *Boumediene I,* 476 F.3d at 994.

242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

2. **The Court Has the Discretion to Issue a Stay-and-Abey Order, and Such an Order Is Mandated Where a Procedural Bar May Prevent Future Habeas Review.**

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254. In *Rhines v. Weber*[12], the Supreme Court explicitly approved the stay-and-abey procedure requested here by Petitioner in the context of federal habeas corpus proceedings. The Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions. Moreover, where there is i) just cause, ii) no intent to delay on the part of the petitioner, and iii) a likelihood of success, it would be an abuse of discretion for the court *not* to issue a stay-and-abey order.

A. **The District Court Has Discretion to Enter a Stay.**

In *Rhines*, the prisoner filed in federal court a mixed habeas petition, one containing both claims exhausted through the state court system and unexhausted claims. The Supreme Court held in *Rhines* that a federal court retains discretion to maintain jurisdiction over pending habeas petitions by staying the action to allow an exhaustion of remedies when all remedies have not been exhausted. The *Rhines* decision has allowed district courts to issue stay-and-abey orders at their discretion.

---

[12] 544 U.S. 269 (2005)

6

**B.    It Would Be an Abuse of Discretion for This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines*.**

Respondents attempt to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition," and the "authority of a court to enter a stay is constrained by statute."[13] However, Respondents fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the habeas petition, as it is here. In fact, in the absence of intentional dilatory tactics by the petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious.[14] Petitioner in the present case satisfies all three preconditions – good cause, no deliberate delay, and potentially meritorious claims – under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust. Whereas the petitioner in *Rhines* at least had the ability to pursue both modes of relief at the outset of his case, the potential remedy in Petitioner's case did not exist until after his habeas corpus petition was filed in August 2005, and did not purport to provide the habeas relief to which Petitioner was entitled to at the time the habeas action was filed. The questions left open in the Supreme Court's decision in *Rasul v. Bush*,[15] which established a right to proceed

---

[13] Motion to Dismiss at 7.

[14] *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

[15] 542 U.S. 466 (2004).

under 28 U.S.C. § 2241 at the time Petitioner submitted his pleadings, and the subsequent DTA and MCA, have resulted in major complexities that left the legal landscape opaque. The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February 2007. Respondents argue that Petitioner could have pursued his petitions at any time since the enactment of the DTA[16]; however, it should be noted that as of the *Hamdan* decision[17], Petitioner, whose case was filed before the enactment of the DTA, had no reason to believe that his habeas petition would be dismissed and that an alternative remedy would be necessary. Petitioner thus had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene*.

Second, Petitioner has done nothing to deliberately delay his case. Counsel filed Petitioner's petition for habeas corpus relief in August 2005, and soon thereafter this case was stayed by this Court, and has remained in abeyance ever since.

Third, the claims raised both in this Court and in the DTA Petition (to be filed) are potentially meritorious. Counsel believes that Petitioner has been improperly designated as an enemy combatant, as Respondents have not provided any independent evidence suggesting that Petitioner was engaged in or supported any hostile actions against the United States and its coalition allies between September 11, 2001 and the time of his capture.

---

[16] Motion to Dismiss at 7.

[17] *Hamdan v. Rumsfeld,* 126 S. Ct. 2749 (2006).

Respondents argue that Petitioner has no statutory right to have his case abeyed as he exhausts alternative remedies.[18] Again, Respondents misinterpret the holding in *Rhines*. By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for his habeas proceedings in this court, Petitioner is challenging the constitutionality of the very statute Respondents are citing as the basis for dismissing said proceedings. Not only is abeyance within this court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

**3.    In the Event This Court Determines It Lacks Jurisdiction, Petitioner's Case Should Be Transferred to the Court of Appeals Pursuant to 28 U.S.C. 1631.**

If the Court nevertheless finds that it lacks jurisdiction to hear this case and declines to enter a stay, it should transfer the habeas action to the Court of Appeals for consolidation with Petitioner's DTA petition (to be filed). The transfer statute provides in relevant part:

> Whenever a civil action is filed in a court…or appeal…is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631. It is in the interest of justice for this Court to ensure that the current Protective Order remains in place, thus maintaining counsel's unbroken access to evidence needed to prepare the DTA petition, pending the Court of Appeals'

---

[18] Motion to Dismiss at 6.

9

decision on how to govern these proceedings.[19] It is also in the interest of justice to preserve the status quo, where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues such as client access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, this Court (at a minimum) should ensure that there is no gap in governing procedures until the Court of Appeals can fully consider these matters in *Bismullah,* No. 06-1197, and *Parhat v. Gates,* No. 06-1397..

**4.    The Petition Is Not Ripe for Dismissal and Should Not Be Stayed or Transferred Even Though Petitioner Has Been Transferred to Saudi Arabia.**

Petitioner Al-Rubaish was transferred from Guantanamo to a Saudi Arabia prison in December 2006. He has not been released from prison. Respondents now move to dismiss the pending actions of all repatriated detainees for lack of jurisdiction. However, for all of the reasons cited above, this Court should not dismiss Petitioner's Petition (nor the Petitions of other repatriated detainees).

In determining whether to grant certain equitable forms of relief in habeas actions, courts frequently evaluate whether the petitioner will suffer irreparable harm absent the

---

[19] The Government has taken the position both in the Court of Appeals and in this Court that the detainees' habeas corpus cases should be transferred pursuant to 28 U.S.C. § 1631, and has cited legislative history of the DTA that it suggests supports such transfer. *E.g.,* Supplemental Reply Brief of the Federal Parties, at 28-31, *Al Odah v. United States*, Nos. 05-5062, et al. and 05-5064, et al. (D.C. Cir. Mar. 17, 2006) (citing comments of Senator Graham, *inter alia*); *Hamdan v. Rumsfeld*, Civil Action No. 1:04-cv-01519-JR, Respondents' Reply in Support of Motion to Dismiss, at 45 n. 24 (D.D.C. Dec. 8, 2006).

relief requested. In *Kanivets v. Riley*[20], a foreign national petitioned the District Court for a stay of removal pending habeas review. Relief was granted in part because the District Court found that petitioner would have been irreparably harmed had he been removed prior to full review of his habeas petition, as there was a possibility that the court "[might] find legal error"[21] warranting a reexamination of petitioner's application for asylum. Similarly, this Court in *Omar v. Harvey*[22] ordered injunctive relief preventing petitioner's transfer from U.S. military custody to the custody of Iraqi authorities, as he would have "[suffered] irreparable harm if his current habeas claim [was] eliminated or mooted by the respondent's actions."[23] This Court further noted that the "danger that the respondents could 'obviate' the petitioner's right to 'test the legitimacy of his executive detention' would certainly constitute a threat of irreparable harm."[24]

Dismissal would irreparably harm Petitioner Al-Rubaish. Under the DTA, petitions to the Court of Appeals may only be filed by persons currently imprisoned in Guantánamo. In the event that these actions are dismissed pursuant to *Boumediene I*, but the Supreme Court later finds the MCA to be unconstitutional, prisoners still in Guantánamo could move to reinstate their petitions or reapply for the writ. However, Petitioner Al- Rubaish would be left with no further recourse. As previously briefed, despite his transfer, Petitioner' s claims against the U.S. government have not been

---

[20] 286 F. Supp. 2d 460 (2003).

[21] *Kanivets,* 286 F. Supp. 2d at 468

[22] No. 05-2374, 2006 WL 286861 (D.D.C. Feb. 6, 2006).

[23] *Id. At 2.*

[24] Id. (quoting *Lee v. Reno*, 15 F. Supp. 2d 26, 32 (D.D.C. 1998)).

11

rendered moot because of, among other things, the collateral effects pursuant to having been labeled an "enemy combatant," a designation that the U.S. government to this day refuses to retract.

Respondents' unilateral cessation of the conduct that precipitated a suit by a petitioner does not automatically render a case moot. If a petitioner continues to suffer collateral injury as a result of the defendant's challenged conduct and a court may rectify that injury, a justiciable "case or controversy" remains. "While a court may not be able to return the parties to the *status quo ante* … a court can fashion *some* form of meaningful relief in circumstances such as these." *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12-13 (1992), (holding that the availability of even a partial remedy is sufficient to prevent a case from being moot); *see also Carafas v. LaVallee*, 391 U.S. 234 (1968) (noting, in the case of a petitioner who was released from prison while awaiting a decision on his habeas corpus petition, that the statutory power of the federal courts to proceed to a final adjudication of a habeas corpus proceeding does not depend upon the petitioner remaining in custody); *In re Ballay*, 482 F.2d 648, 651 (D.C. Cir. 1973) (affirming that a "case is moot only if it is shown that there is *no possibility* that any collateral legal consequences will be imposed on the basis of the challenged conviction." (quoting *Sibron v. New York,* 392 U.S. 40, 57 (1968))); and *Justin v. Jacobs*, 449 F.2d 1017, 1019 (D.C. Cir. 1971) (holding that a case is not moot where collateral consequences may follow the appellant).

Mr. Al-Rubaish was held in United States custody for five years (January 20, 2002 to December 2006), and was designated an "enemy combatant." For the rest of his life, he will carry with him whispered suspicions of terrorism, an ignominy he will be

unable to dispel without a day in court.  Moreover,  Mr. Al-Rubaish is likely to suffer a variety of restrictions on his freedom that make the present dispute very much live.

Petitioner Al-Rubaish faces  collateral consequences including, for example, the following. First, courts have previously acknowledged that the stigma arising from being charged with certain crimes can constitute the type of collateral consequence that would keep a case "alive" and give a habeas petitioner an opportunity to vindicate his rights. *See Demjanjuk v. Petrovsky*, 10 F.3d 338, 355-56 (6th Cir. 1993) (holding that the petitioner's acquittal and release in Israel did not moot claim of unlawful extradition because of "collateral consequence" of stigma of being found by the district court to be the Nazi prison guard nicknamed "Ivan the Terrible").  Unless he is granted the opportunity to litigate his case, Petitioner Al-Rubaish will forever bear the stigma of being classified as an "enemy combatant" by the President of the United States.

Additionally, Petitioner Al-Rubaish may face difficulty in obtaining future employment as a result of his detention and designation as an "enemy combatant," a contingency that also precludes holding his case to be moot. *See United States v. Schrimsher (In re Butts),* 493 F.2d 842, 844 (5th Cir. 1974) (recognizing that a conviction for contempt of court could have the collateral consequence of damaging petitioner's law practice by undermining his reputation, and refusing to dismiss the appeal as moot). Having been unable to defend himself against accusations of terrorism for five years, it would be doubly cruel to not preserve Petitioner Al-Rubaish's ability, at the very least, to clear his good name for the sake of his family and his life after Guantánamo.  As the Supreme Court recognized in *Carafas*, the habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody.  Its mandate is

broad with respect to the relief that may be granted.  It provides that 'the court shall . . . dispose of the matter *as law and justice require*.'"  *Carafas,* 391 U.S. at 239 (citation omitted) (emphasis added).

As long as the possibility of these collateral consequences exists, Petitioner's case cannot be dismissed as moot.  For this reason, Mr. Al-Rubaish's petition still presents a live "case or controversy" and should not be dismissed.

Because the justification for dismissing Petitioner's Petition is the same as that for dismissing those of other habeas claimants still imprisoned in Guantánamo, Petitioner's action should not  be dismissed.  Instead, Mr. Al- Rubaish's Petition should be stayed and abeyed pending exhaustion of his DTA action.

**Conclusion**

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter an order holding such litigation in abeyance pending the outcome of the Petitioner's DTA petition.

Dated  May 2, 2007.

Respectfully submitted,

Counsel for Petitioners:

*Of Counsel*

  /s/   Michael Rapkin

Gitanjali S. Gutierrez  
Center for Constitutional Rights  
666 Broadway, 7th Floor  
New York, New York 10012  
Tel: (212) 614-6439  
Fax: (212) 614-6499  

Michael Rapkin  
Law Offices of Michael Rapkin  
1299 Ocean Ave., Suite 900  
Santa Monica, CA 90401  
Tel: (310) 656-788-  
Fax: (310) 656-7883